Lois WHITE et al., Plaintiffs-Appellants,

v.

SCRIVNER CORPORATION et al.,
Defendants-Appellees.

No. 77–2016.

United States Court of Appeals,
Fifth Circuit.

April 30, 1979.

Roy L. Brun, Shreveport, La., for plaintiffs-appellants.

Richard H. Switzer, Shreveport, La., for defendants-appellees.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

While Lois White, her daughter Sandra White, and her sister Gloria Pratt were shopping in a Scrivner Corporation food store one night, the assistant manager of the store accused Lois White of stealing a roast from the store's meat counter and requested that she and her two relatives accompany him to a room in the back of the market. The women were asked for permission to search their purses and, upon examining the contents, the assistant manager found a pistol in Lois White's handbag. He then told the women to stand against a wall in the room while he called the police, who arrived a short time later and arrested Lois White for carrying a concealed weap-

on. Neither the police nor the assistant manager ever found any of the store's goods in Lois White's possession. White and her relatives subsequently filed this 42 U.S.C. § 1983 action against Scrivner and the employees involved in the incident, alleging that the detention and search infringed the plaintiffs' rights under the fourteenth amendment. This action was tried to the district court without a jury. The court found for the defendants and held that the employees' actions did not violate any of the plaintiffs' constitutional rights. We affirm.

To establish a claim under 42 U.S.C. § 1983, plaintiffs must show that the defendants acted under color of state law to deprive them of a right secured by the Constitution and laws of the United States. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185, 192 (1978); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142, 150 (1970). Plaintiffs here offer three arguments to meet the under-color-of-law requirement. First, they contend that the employees, in detaining them and searching their purses, were performing a function exclusively reserved to the state and therefore should be treated as state actors. Second, plaintiffs assert that state action should be found since the defendants acted under a state statute permitting detention of suspected shoplifters.[1] Third, they assert that state action was present here since the defendants acted in concert with the police to detain and search the plaintiffs.

Plaintiffs' first and second arguments are governed by the Supreme Court's recent decision in *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). In *Flagg Brothers,* a warehouseman threatened to invoke the provisions of a New York statute to sell the plaintiff's goods in order to pay past-due storage fees.

---

1. La.Code Crim.Pro.Ann. art. 215A (West Supp.1978) provides in part:

   A peace officer, merchant, or specifically authorized employee of a merchant, may use reasonable force to detain a person for questioning on the merchant's premises, for a length of time not to exceed sixty minutes, when he has reasonable cause to believe that the person has committed theft of goods held for sale by the merchant, regardless of the actual value of the goods. The detention shall not constitute an arrest.

Plaintiff brought suit under § 1983 seeking damages and an injunction to prohibit the proposed sale. The Supreme Court held that the plaintiff failed to show that the warehouseman's threats were made under color of state law. The Court first rejected the notion that the warehouseman, in threatening to sell the plaintiff's goods, was performing a public function. Although it reaffirmed the principle that a private party's performance of public functions can in certain situations be attributed to the state, the Court concluded that attribution was appropriate only when the function performed is "exclusively reserved to the state." 436 U.S. at 157, 98 S.Ct. at 1734, 56 L.Ed.2d at 194; *see Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The Court noted that this definition of public function embraces very few activities and mentioned two examples from previous cases: the conduct of elections, *see Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932), and the performance of all necessary municipal functions in a "company town," *see Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). The Court distinguished the warehouseman's statute in *Flagg Brothers* from the elections in *Terry* and the company town in *Marsh* in this language:

> Although the elections held by the Democratic Party and its affiliates were the only meaningful elections in Texas, and the streets owned by the Gulf Shipbuilding Corporation were the only streets in Chickasaw, the proposed sale by Flagg Brothers under § 7–210 is not the only means of resolving this purely private dispute.

436 U.S. 159–160, 98 S.Ct. at 1735, 56 L.Ed.2d at 195–196. Since the New York statutes provided creditors and debtors with a range of choices of resolution of their disputes, the use of one of those remedies by Flagg Brothers was not usurpation of "an exclusive prerogative of the sovereign." 436 U.S. at 160, 98 S.Ct. at 1735, 56 L.Ed.2d at 196.

The *Flagg Brothers* Court also rejected the plaintiff's contention that the warehouseman's actions should be attributed to the state since the state authorized and encouraged the action by adopting the warehouseman's statute. The statute did not compel the warehouseman to sell the plaintiff's goods, but merely indicated that the state would not interfere with such sales. Thus, what the plaintiff complained of was not state action, but the fact the state had *not acted* to deny the warehouseman the power to sell the goods. The Court held the state's inaction could not be characterized as "authorization" or "encouragement." 436 U.S. at 164, 98 S.Ct. at 1737–38, 56 L.Ed.2d at 198.

■ Plaintiffs here urge that the defendants performed public functions in detaining them as suspected shoplifters, in searching their purses, and in detaining them after the gun was found, even though the defendants no longer had any reason to believe they were shoplifting. We disagree. Like the warehouseman in *Flagg Brothers,* the merchant here did not perform any function "exclusively reserved to the state." A merchant's detention of persons suspected of stealing store property simply is not an action exclusively associated with the state. Experience teaches that the prime responsibility for protection of personal property remains with the individual. A storekeeper's central motivation in detaining a person whom he believes to be in the act of stealing his property is self-protection, not altruism. *See* W. Prosser, Handbook of the Law of Torts 108–117 (4th ed. 1971). Such action cannot logically be attributed to the state. *See Battle v. Dayton-Hudson Corp.,* 399 F.Supp. 900, 904 (D.Minn.1975); *Warren v. Cummings,* 303 F.Supp. 803, 805 (D.Colo.1969). Moreover, the State of Louisiana, like the State of New York in *Flagg Brothers,* provides damage remedies for a merchant's wrongful detention of a suspected shoplifter, *Pace v. Winn-Dixie Louisiana, Inc.,* 339 So.2d 856 (La.Ct.App. 1st Cir. 1976), *writ denied,* 341 So.2d 404 (1977); *Smith v. Whatley,* 338

So.2d 153 (La.Ct.App. 2d Cir. 1976), *writ denied,* 341 So.2d 4 (1977), and for slander, *Levy v. Duclaux,* 324 So.2d 1 (La.Ct.App. 4th Cir. 1975), *writ denied,* 328 So.2d 887–888 (1976); *Bacharach v. F.W. Woolworth Co.,* 160 So.2d 854 (La.Ct.App. 4th Cir.), *writ denied,* 246 La. 75, 163 So.2d 356 (1964).

■ Defendants' search of plaintiffs' purses and their detention after the gun was found also cannot be characterized as functions exclusively reserved to the state. While these actions are usually performed by police officers, private citizens do occasionally engage in them. The search here was no more than an extension of the detention for shoplifting. It is not unusual for a storekeeper to attempt to discover whether suspected shoplifters have indeed stolen store goods before calling the police. Once the defendants found the gun, detention of the women until the arrival of the police was also not an action outside the realm of common experience. It is not unknown for private citizens to intervene when they see what they believe are crimes being committed. *See Cummings, supra,* 303 F.Supp. at 806; Prosser, *supra,* at 131–36. In addition, Louisiana law permits a person wrongfully detained by another to bring an action for damages based on false imprisonment. *See Rawls v. Daughters of Charity of St. Vincent De Paul, Inc.,* 491 F.2d 141, 146 (5th Cir. 1974), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 307 (1974); *Kyle v. City of New Orleans,* 353 So.2d 969, 971 (La.1977). We therefore conclude that the defendants here did not perform any function exclusively reserved to the sovereign.

■ In asserting the existence of state action, plaintiffs also rely on the Louisiana statute insulating merchants from liability for detention of persons reasonably believed to be shoplifters. *Flagg Brothers* requires rejection of this argument. The statute here is essentially the same type of provision as the statute at issue in *Flagg Brothers.* The Louisiana provision does not compel merchants to detain shoplifters, but merely permits them to do so under certain circumstances. Absent some compulsion or some overt state involvement, no state action can be found because of the mere existence of the statute. *Flagg Brothers, supra,* 436 U.S. at 164, 98 S.Ct. at 1737–38, 56 L.Ed.2d at 198; *see Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

Plaintiffs also urge that the defendants acted under color of law since their detention was the product of a pre-existing plan between the police and the defendants. *Duriso v. K–Mart,* 559 F.2d 1274 (5th Cir. 1977); *Smith v. Brookshire Brothers,* 519 F.2d 93 (5th Cir. 1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976). In *Brookshire Brothers,* we found state action in a merchant's detention of suspected shoplifters since that detention was the result of a preconceived plan formulated by the City Police Department and the merchant. The record showed that the police routinely arrested suspected shoplifters solely upon the statement of the storekeeper that a party had been engaged in shoplifting. No independent investigation was made and no sworn complaint was required.

A similar plan of concerted action was found in *Duriso.* The record there showed that the police customarily took persons into custody for shoplifting if the manager signed a form stating that the person accused of shoplifting had not been given permission to remove items from the store without payment and that the store requested the filing of criminal charges against the individual. The court concluded that the use of this form was sufficient evidence to allow a jury to find the existence of concerted action.

■ The record here is devoid of evidence showing a plan between the police and the defendants for dealing with shoplifters. Uncontradicted testimony established that the Shreveport Police Department had a policy of conducting independent investigations before making arrests for shoplifting; the policemen did not customarily rely solely on the merchants' accusation in arresting shoplifters. Moreover,

the department also required merchants to swear out a complaint prior to refiling of charges against a defendant. The proof presented here did not evince a plan of concerted action similar to that involved in *Duriso* and *Brookshire Brothers.*

Plaintiffs also note that the employee who detained them showed them an identification card which led them to believe that he was a policeman. A finding of state action cannot, however, be based solely upon the plaintiff's beliefs concerning the employee's activity, no matter how well-founded those beliefs were. *Ouzts v. Maryland National Insurance Co.,* 505 F.2d 547, 554 (9th Cir. 1974) (en banc), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975); *Warren v. Cummings,* 303 F.Supp. 803, 804–05 (D.Colo.1969). Plaintiffs failed to prove that the card in question conveyed any authority whatsoever to the employee. Indeed, the card itself was never introduced into evidence. In the absence of evidence showing that the City of Shreveport actively participated in the misrepresentation of the employee's status as a law enforcement official, state action cannot be found in the employee's use or misuse of the identification card.

The plaintiffs failed to show that the defendants' actions were performed under color of state law. The district court was therefore correct in denying them any recovery under the provisions of 42 U.S.C. § 1983.

AFFIRMED.